UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

THERESA STEFFEN,

    Plaintiff,

  vs.

HOME DEPOT U.S.A., INC.,

    Defendant.

NO. CV-13-199-JLQ

**ORDER DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

BEFORE THE COURT is the Defendant's Motion for Summary Judgment (ECF No. 21) filed by Defendant The Home Depot, U.S.A, Inc., ("Home Depot"), to which Plaintiff, Theresa Steffen has filed a Response (ECF No. 34) and Home Depot has filed a Reply (ECF No. 35).  The Motion was heard in a telephonic hearing on April 11, 2014. Gregory Thatcher appeared on behalf of Home Depot and Michael Howard represented the Plaintiff.  After hearing oral argument, reviewing the briefs and the evidence, the court herein **DENIES** Home Depot's Motion.  The following Order is intended to memorialize and supplement the oral rulings of the court.

## I.  BACKGROUND

In the afternoon of July 31, 2011, Theresa Steffen visited the Home Depot store located at 5617 E. Sprague Avenue in Spokane Valley, Washington.  The Complaint alleges that "[w]hile in the Garden Department of the Home Depot Store, [she] slipped on a puddle of water...and suffered serious and permanent injuries to her low back and right shoulder," which necessitated two surgeries.   (ECF No. 2, Ex. 1, ¶ 3.1 ).  Plaintiff commenced this personal injury action seeking compensatory damages against Home

Depot in Spokane Superior Court.  On May 29, 2013, the Defendant removed the matter to this court pursuant to 28 U.S.C. § 1441(a) on the ground that diversity jurisdiction exists under 28 U.S.C. § 1332(a).  Plaintiff contends Home Depot was negligent in a number of related respects: (1) failing to maintain the premises in a reasonably safe condition; (2) failing to adequately warn Plaintiff of the unsafe condition; and (3) failing to rectify or abate the dangerous wet floor condition where customers were forseeably going to walk.  (ECF No. 2 (Complaint at ¶ 4.3-4.6)).

Home Depot designates just one undisputed fact in support of its Motion: that "the substance [Plaintiff] allegedly slipped on was water, and only water."  (ECF No. 35 at 2).  As premises liability cases require a fact specific-- not categorical--assessment, the court provides the following additional context drawn from the summary judgment record and viewed in the light most favorable to Plaintiff on this summary judgment motion.

The location of Plaintiff's alleged fall was an indoor plant section of the retail store.  Plaintiff alleges that after proceeding down an aisle past a display of plants she attempted to turn the corner around the end cap and she slipped on water, falling forward onto the cement floor.  Minutes prior to Plaintiff's alleged fall, Home Depot employee Terry Moss had completed watering plants and was squeegeeing the floor to "try to get as much water off the main walk area as is possible." (ECF No. 32, Ex. 1 (Moss Depo.) at 6).  Moss was called away to assist a customer nearby regarding lawn mowers, when the Plaintiff walked up to her and told her she had fallen.  Plaintiff does not  recall seeing any caution or warning signs prior to her fall.

Plaintiff retained Joellen Gill as her liability expert.  Gill is a human factors engineer and certified safety professional.  Her January 2, 2014 expert report sets forth three main opinions: 1) the cement floor where Plaintiff fell was in a hazardous condition at the time of her fall because the slip resistance of the floor fell below standard hazard levels when wet; 2) Home Depot failed to abate the hazard in a timely manner due to a lack of an effective safety and risk management program; and 3) Plaintiff's actions or inactions were not a significant contributing factor to her slip and fall.  (ECF No. 23 at

Ex. 2).

Home Depot's liability expert is Edward G. Pool, a mechanical engineer. He opines that it is unlikely Plaintiff fell on puddled water, and even if she had, based upon his tests of Home Depot's retail floor, the floor was "a safe walking surface and provided greater slip resistence when wet than when dry." (ECF No. 32, Ex. 5).

Home Depot moves for summary judgment alleging Plaintiff lacks sufficient evidence where she only claims to have slipped on water. Home Depot also moves to strike Gill's expert opinions under *Daubert v. Merrell Dow*, 509 U.S. 579 (1993). Home Depot's challenge to Gill's opinions is also the subject of a separate pretrial Motion in Limine (ECF No. 43) set for hearing at the pretrial conference on April 29, 2014. Jury trial is scheduled for May 19, 2014.

## II. LEGAL STANDARD

The court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. *Id.* at 255, 257. When the record, however, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. *See Beard v. Banks*, 548 U.S. 521, 529 (2006) ( "Rule 56(c) 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial .' ") (quoting *Celotex*, 477 U.S. at 322)). If different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir.1981).

**III. DISCUSSION**

**A.     Premises Liability**

In diversity actions, federal courts apply state substantive law. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1090 (9th Cir. 2001).To establish negligence, a plaintiff must establish four basic elements: (1) the existence of a duty, (2) a breach of that duty, (3) a resulting injury, and (4) proximate cause. *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 127–28 (1994).  Plaintiff contends that she is a business invitee to whom Home Depot owed a duty of ordinary care, which includes an affirmative duty to inspect for dangerous conditions, "followed by such repair, safeguards, or warning as may be reasonably necessary." *Tincani v. Inland Empire Zoological Society*, 124 Wash.2d 121, 139 (1994).

To determine landowner liability to invitees, Washington courts apply the principles contained in the Restatement (Second) of Torts § 343 (1965), which imposes liability for physical harm to its invitees if the landowner:

    (a)    knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

    (b)    should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

    (c)    fails to exercise reasonable care to protect them against the danger.

*Tincani*, 124 Wn.2d at 138.  Courts applying this analysis are mindful of the well established principle that store owners are not insurers of their customers' safety.

What constitutes a reasonably safe versus a dangerous condition "'depends upon the nature of the business conducted and the circumstances surrounding the particular situation.'" *Messina v. Rhodes Co.*, 67 Wash.2d 19, 27, 406 P.2d 312 (1965) (quoting *Shumaker v. Charada Inv. Co.*, 183 Wash. 521, 524 (1935)).  Due to this fact-intensive inquiry, "[n]egligence is generally a question of fact for the jury, and should be decided as a matter of law only 'in the clearest of cases and when reasonable minds could not have differed in their interpretation' of the facts.*" Bodin v. City of Stanwood*, 130 Wash.2d 726, 741, 927 P.2d 240 (1996) (*quoting Young v. Caravan Corp.*, 99 Wash.2d 655, 661, 663 P.2d 834, 672 P.2d 1267 (1983)).

**B.    Washington's Wet Floor Jurisprudence**

Home Depot contends Plaintiff's negligence claims fail because Home Depot cannot be held liable for a dangerous condition which the Plaintiff cannot prove existed. Whether an unreasonably slippery condition existed at the time and place of the Plaintiff's fall is ordinarily an issue of fact. Home Depot claims Plaintiff cannot demonstrate an unsafe condition existed in this case because she has "[n]o further evidence...showing "that this water was mixed with another substance, e.g., mud, oil, or candy wrappers"  (ECF No. 35 at 2) and "water alone, as a matter of law, is not a hazard" (ECF No. 35 at 6).  Home Depot relies upon Washington's wet floor jurisprudence arising in *Shumaker v. Charada Inv. Co.,* 183 Wash. 521, 530 (1935); *Merrick v. Sears, Roebuck & Co*., 67 Wash.2d 426 (1965)*; Brant v. Market Basket Stores*, *Inc.,* 72 Wash.2d 466 (1967); *Charlton v. Toys R Us–Delaware Inc.*, 158 Wash.App. 906 (Wash.App. Div. 3, 2010); and *Tavai v. Walmart Stores*, 176 Wash.App. 122 (Wash.App. Div. 2, 2013).  These cases are readily distinguishable from the case at hand and do not support the position that water alone can never create a dangerous condition.

In Washington's first wet floor case, *Shumaker,* the Plaintiff slipped and fell in a public market on a cement aisle on which she had walked "hundreds of occasions," where she was "thoroughly familiar with the situation," where venders of fresh vegetables would water their merchandise, and where the market floors were often damp or wet.  *Shumaker*, 183 Wash. 521, 527 (1935).  In a 5-4 decision, the Washington Supreme Court reversed the jury's verdict in favor of the plaintiff holding that liability may not be imposed when the hazard is readily apparent.  Home Depot clings to the *Shumaker* majority's statement: "[a] wet cement surface does not create a condition dangerous to pedestrians.  It is a most common condition, and one readily noticed by the most casual glance."  *Id*. at 530-531. The Washington Supreme Court later explained that this statement "decisively disposed of any contention that a wet cement floor, *per se*, constitutes a dangerous condition."  *Brant*, 72 Wash.2d 466, 449 (1967)(emphasis added).

The state Supreme Court followed *Shumaker* in its second "water on the floor case" affirming judgment of dismissal where the plaintiff employee lacked sufficient evidence of a dangerous condition and the store's notice of the condition. *Merrick v. Sears, Roebuck & Co.*, 67 Wash.2d 426, 428 (1965)(explaining where Plaintiff only described the floor as "wet to the hand," "one could not infer from the plaintiff's evidence that the floor had (1) an inordinate amount of water in such a quantity as to render it dangerously slippery, or (2) that the wetness persisted to a dangerous degree for a sufficient time to charge the store with notice of the wet and slippery condition.").

Two of the cases cited involved slip and falls occurring at a time of inclement weather when it can be reasonably expected that water might be tracked inside a store's entrance. *Brant v. Market Basket Stores*, 72 Wash.2d 446, 433 P.2d 863 (1967)(dismissing claim for fall within 12 feet of an entrance on a snowy day where there was "no testimony as to the character of the floor" or that "water would render such a floor, as then and there existed, slippery or dangerous."); *Charlton v. Toys R Us–Delaware Inc.*, 246 P.3d 199 (Wash.App. Div. 3 2010)(dismissing Plaintiff's case where the Plaintiff did not see any water on the floor, could not describe the amount of water, did not know how the water got onto the floor, how long it had been there before she entered the store, or when the floor had last been mopped and dried by store employees). In both *Brant* and *Charlton*, the plaintiffs lacked sufficient evidence to establish that a dangerous condition existed or that the property owner had any reason to know that a dangerous condition existed.

In the most recent case cited, *Tavai v. Walmart Stores*, 176 Wash.App. 122 (2013), the plaintiff slipped on water 15 feet away from a check-out counter at Walmart. There was no evidence as to the source of the water. The plaintiff did not contend that Walmart should have discovered the water, rather plaintiff argued Walmart was negligent in its choice of flooring. The court held that merely proffering expert testimony that the floor was slippery when wet was insufficient to support the theory of negligent selection of flooring and prove Walmart had constructive notice of a dangerous condition. *Tavai*, 176

Wash.App. at 134.

The plaintiffs' low success rates in the wet floor cases outlined above should not be misconstrued to suggest that the law shields businesses from liability in an entire category of wet floor slip and falls. Home Depot's premise that "the alleged substance -- water - is not hazardous" (ECF No 35 at 4) fails to recognize that *it could be*. Just like any other foreign substance, it can expose an invitee to an unreasonable risk of harm. *See e.g., Harmon v. Cova*, 180 Ga. App. 805, 350 S.E.2d 774 (1986)(genuine issue of fact action against bar owners in slip and fall in restroom where evidence showed that overflowing toilets were a continuous problem); *Wal-Mart Stores, Inc. v. Redding*, 56 S.W.3d. 141 (Tex.App-Houston 2001)(dangerous condition created by wet mist just inside the front door). The controlling issue in each of the above-described cases was not that the substance involved was only water, but the lack of other proof *beyond* the mere presence of water on the floor.

## C. Plaintiff's Evidence of a Dangerous Condition

The sole question here is whether Plaintiff's evidence of a dangerous condition goes beyond water on the floor. The cases do not precisely demarcate what showing a Plaintiff must make, as what constitutes a reasonably safe condition is a highly fact specific inquiry depending upon "the nature of the business conducted and the circumstances surrounding the particular situation." *Messina v. Rhodes Co.*, 67 Wash. 19, 27 (1965). The court concludes that here, there are special circumstances of this case which explain why it is for the jury to decide whether an unreasonable risk of harm existed. This includes Plaintiff's evidence of: 1) the timing of her alleged fall (July afternoon during business hours); 2) the location of the alleged fall (interior space where an invitee's attention is on looking at displayed goods); 3) the identification of the substance (water); 4) the description of the flooring (smooth cement), 5) an identifiable source of the water having been applied by Defendant's employee ; 6) multiple descriptions regarding of the presence and amount of water before and after the fall; and 7) Plaintiff's expert testimony that Home Depot's smooth cement floor is dangerously

ORDER - 7

slippery when wet. This evidence, which Home Depot has largely ignored in its focus upon the nature of the substance, distinguishes this case from the wet floor cases cited by Home Depot.

The court rejects Home Depot's claim that Plaintiff's claims should fail because like in *Tavai*, 176 Wash.App. 122 (2013), Plaintiff's expert offers "no opinion on alternative flooring that would be slip resistant, or less slippery, when wet or that Home Depot's selection of its flooring was otherwise negligent." (ECF No. 35 at 4). *Tavai* is inapposite as Plaintiff does not contend the negligent act occurred in Home Depot's process of selecting the flooring. Rather, Plaintiff's theories asserted in the Complaint are that Home Depot negligently failed to *maintain* the premises (¶ 4.3, ¶ 4.4), failed to *warn* (¶¶ 4.3, 4.6), and failed to *rectify/abate* a dangerous condition its employee created (¶¶ 4.4, 4.6). Expert opinion on alternative flooring options would not be absolutely necessary to support any one of these theories.

**D.    Defendant's Motion to Strike**

Home Depot includes in its Motion a *Daubert* challenge to the opinions of Joellen Gill. The narrow scope of the Defendant's Motion for Summary Judgment challenging only the element of the presence of a hazardous condition only calls only for the court's review of that portion of her first opinion that the floor was "in a hazardous condition at the time of her slip and fall." (ECF No. 23 at Ex. 2 at 2). Home Depot's challenges to her other opinions will be reviewed at a later date in the context of its Motion in Limine. Gill's hazardous condition opinion is based upon her coefficient of friction testing using a tribometer on the area of the Home Depot floor where Plaintiff alleges she fell and the following conclusions:

1.    The lower the slip resistance of a surface, the more likely a slip and fall incident will occur.
2.    "In general, the coefficient of friction for a walking surface must exceed 0.5 to be considered safe."; "A slip resistance of 0.3 or lower is generally classified as very hazardous."
3.    "[T]he average slip resistance [of Home Depot's floor in the location nearest her slip and fall] when wet was 0.28 +/- .02."

(ECF No. 23 , Ex. 2 at 6).

ORDER - 8

District courts have broad discretion to determine the admissibility and qualification of experts pursuant to Federal Rule of Evidence 702. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed.R.Evid. 702. Under *Daubert v. Merrell Dow Pharmaceuticals*, the Supreme Court set forth four non-exhaustive factors to determine the reliability of an expert's reasoning or methodology: (i) whether the theory or technique relied on has been tested; (ii) whether the theory or technique has been subjected to peer review and publication; (iii) whether there is a known or potential rate of error and the existence and maintenance of standards controlling the technique's operation in the case of a particular scientific technique; and (iv) whether the theory or method has been generally accepted by the scientific community. 509 U.S. 579, 593–94(1993). "[T]he trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id*. at 589. The factors set forth in *Daubert* are not exhaustive and are applied flexibly, especially where the testimony is based on "technical" or "other specialized knowledge," as is the case with engineers. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

Home Depot does not challenge Gill's qualification to render an opinion regarding coefficients of friction. It claims that the methodology used by Gill is unreliable because 1) the device she used to conduct her tests was an English XL tribometer; and 2) "[s]he presents no evidence that [a] 0.5 a [sic] coefficient of friction is the accepted threshold for slip resistance - especially for a wet cement surface in a retail store." (ECF No. 43 at 5).

### 1. Reliability of the Device (English XL Tribometer)

Home Depot challenges the device utilized by Gill relying upon a 2010 article published in the Journal of Forensic Sciences documenting a study of <u>one</u> tribometer of 11 different models, tested on four different surfaces (granite, porcelain, tile, and vinyl composite). The article concludes that "different tribometers yield different COF values for a given surface" and that "care should be taken in the interpretation of tribometer

measurements in determining the safety of various walkway surfaces." (ECF No. 22, Ex. 3).  Of the 11 model tribometers tested in the study, the English XL was one of seven failing to meet the test criteria and produce acceptable results. This study does not support the conclusion that all English XL model tribometers are unreliable (in fact the study suggests otherwise) or that Gill's use of this device in this case necessarily yielded unreliable results.

### 2. Coefficient of Friction Value of 0.5

Home Depot challenges the foundation for Gill's claim that a value of 0.5 for the coefficient of friction "has long been established as the minimum threshold for safe walking." Home Depot claims that because Gill has not demonstrated this is the standard for wet cement surface in a retail store, it should be excluded. Home Depot analogizes to a case where the court excluded expert testimony because nothing in the record demonstrated that the coefficient of friction standards pertained to cruise ship pool decks.  *Sorrels v. NCL (Bahamas) Ltd*, 2013 WL 6271522(S.D.Fla. 2013). However, Gill does not opine that industry standards required Home Depot to have a minimum slip resistence of 0.5 when wet.  Gill's general reference to industry authority utilizing the 0.5 value is used to only to bolster her ultimate conclusion that the measured value of .28 is dangerously slippery.  As Home Depot does not challenge the methodology used by Gill to reach her ultimate conclusion that a floor with a coefficient of friction of .28 would present an unsafe slipping hazard, the court should rejects Home Depot's *Daubert* challenge as to Gill's hazardous condition opinion.   Indeed, Home Depot's own expert opines that "a dynamic coefficient of friction of below 0.3 is generally considered unsafe for normal pedestrian traffic." (ECF No. 32, Ex. 5 at 44).

### V.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**:

1. Defendant's Motion for Summary Judgment (ECF No. 21) is **DENIED**.

2. Home Depot's *Daubert* challenge to the opinion of Joellen Gill concerning the hazardous condition of the floor is rejected.   The court will consider Home Depot's other

challenges to the admissibility of Ms. Gill's remaining opinions in ruling upon Home Depot's Motion in Limine.

**IT IS SO ORDERED**.  The Clerk is hereby directed to enter this Order and furnish copies to counsel.

Dated April 16, 2014.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 11